## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **CONNECTEDVIEW, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **26-11461-BEM** |
| | ) | |
| **FAITH TEAMS, LLC, and** | ) | |
| **SHANE LAPIERRE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

**MURPHY, J.**

This is an action arising out of ConnectedView, LLC's ("Plaintiff") purchase of assets from Faith Teams, LLC ("Faith Teams"). Plaintiff brought claims against Shane LaPierre and his company, Faith Teams (collectively, "Defendants"), for violations of the Computer Fraud and Abuse Act, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, common law fraud, unjust enrichment, and a violation of Massachusetts law. Before the Court now is Defendants' motion to dismiss all claims. For the reasons stated below, the Court will grant in part and deny in part Defendants' motion to dismiss. The motion is granted with respect to Plaintiff's claims under the Computer Fraud and Abuse Act (Counts I, II, and III), and denied with respect to Plaintiff's claims for breach of contract (Count IV), breach of the implied covenant of good faith and fair dealing (Count V), conversion (Count VI), fraud (Count VII), unjust enrichment (Count VIII), and violation of Mass. Gen. Laws ch. 93A (Count IX).

## I.    Background

### A.    Factual Background

The Court draws the following facts from Plaintiff's complaint, Dkt. 1-3 at 1–16 ("Complaint" or "Compl."), and accepts them as true for purposes of the instant motion.

Beginning in 2024, Plaintiff, a Massachusetts limited liability software company, sought "an acquisition in the faith-based nonprofit software market." Compl. ¶¶ 1, 7. By early 2025, Plaintiff began "pre-acquisition due diligence" on Defendant Faith Teams as a potential target. *Id.* ¶ 7. Faith Teams, a Connecticut limited liability company, is owned by LaPierre, a citizen of Connecticut. *Id.* ¶¶ 2–3, 12.

The parties ultimately agreed to an acquisition of Faith Teams's assets for $1.5 million. Dkt. 1-3 at 38. Plaintiff believed Faith Teams's assets would "enable the company to enhance its software platform and to invest additional capital and operational resources into business development." *Id.* ¶ 15. On March 19, 2025, Plaintiff and Defendants executed an acquisition agreement (the "Asset Purchase Agreement") by which Plaintiff would purchase, among other assets, Faith Teams's intellectual property. *Id.* ¶¶ 10–12; *see also* Dkt. 1-3 at 36. This intellectual property included Faith Teams's proprietary software and source code, along with other digital assets. Dkt. 1-3 at 116–17. Defendants also attested in the Asset Purchase Agreement that "[n]o representation or warranty . . . in this Agreement . . . contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein . . . not misleading." *Id.* at 42.

In connection with the sale, on March 18, 2025, LaPierre signed an employment agreement (the "Employment Agreement") with Plaintiff. Compl. ¶ 8; *see also* Dkt. 1-3 at 18. Pursuant to the Employment Agreement, LaPierre agreed that "upon his separation from employment . . . for any reason . . . he would promptly return all company property" including documents, confidential

information, and electronic devices.  Compl. ¶ 9; *see also* Dkt. 1-3 at 22.  On May 8, 2025, LaPierre acknowledged receipt of an employee handbook also requiring, upon separation, return of company property including "computers" and "software."  Compl. ¶ 17.

After the sale was completed, LaPierre began working for Plaintiff.  In his role, LaPierre utilized a laptop which Plaintiff alleges "was the only environment capable of publishing" the Faith Teams software.  *Id.* ¶ 19.  Though LaPierre attempted to install the software onto other Plaintiff-owned devices, he was "unsuccessful."  *Id.*  Therefore, Plaintiff "was required to continue relying exclusively on LaPierre's laptop to publish and maintain the Faith Teams software."  *Id.*

In June 2025, Plaintiff learned "that more than twenty Faith Teams accounts were past due at the time of the acquisition" and that Defendants "did not disclose those arrearages" in the Asset Purchase Agreement.  *Id.* ¶ 21.  Plaintiff also discovered that Defendants' customer list was "inaccurate" and "overstat[ed] the number of active users on the platform, making the company appear significantly larger than it was."  *Id.* ¶ 22.

In October 2025, the "Faith Teams [software] was victimized by fraudulent transactions in the amount of $40,000."  *Id.* ¶ 26.  As Plaintiff worked to resolve those fraudulent transactions, it discovered "similar fraudulent activity" had occurred on the Faith Teams platform in 2024, before the Asset Purchase Agreement.  *Id.* ¶ 27.  This fraudulent activity was not disclosed during the pre-purchase diligence process.  *Id.*  Plaintiff alleges that had Defendants disclosed the prior fraudulent activity it "would have materially affected both the risk assessment and valuation of the Faith Teams software prior to the sale."  *Id.*

On November 3, 2025, "LaPierre verbally resigned" from Plaintiff, after a failed attempt to "renegotiate the terms" of earnout provisions in the Asset Purchase Agreement.  *Id.* ¶ 30.  On November 4, 2025, Plaintiff sent an email to LaPierre accepting his resignation, but one day later,

3

LaPierre replied, stating "I did not intend my recent comments to be taken as a formal resignation. I have not provided written notice, and I wish to continue in my role." *Id.* ¶¶ 31–32. Nevertheless, Plaintiff subsequently terminated LaPierre. *Id.* ¶ 33.

LaPierre met with Plaintiff on November 10, 2025 to begin the process of transitioning his login information and software knowledge. *Id.* ¶ 34. LaPierre and Plaintiff also scheduled an in-person, November 14, 2025 meeting for the return of the laptop containing the Faith Teams software. *Id.* ¶ 35. The day before the meeting, LaPierre declined to attend in-person, but offered to meet via video conference instead. *Id.* ¶ 36. On November 17, 2025, the parties met via video conference for thirty minutes before LaPierre ended the meeting earlier than anticipated. *Id.* ¶ 37.

On November 20, 2025, Plaintiff received a laptop shipped by LaPierre and a USB thumb drive. *Id.* ¶ 39. Plaintiff determined that the laptop had been "intentionally factory reset and wiped of all data prior to its return, resulting in the complete destruction" of the Faith Teams source code and related data. *Id.* LaPierre maintained that the thumb drive contained all the relevant information, though Plaintiff alleges it cannot verify "the completeness, accuracy, and integrity of the files provided." *Id.* ¶ 40. Upon further review, Plaintiff determined the thumb drive "was missing critical source code files" as well as all customer files, marketing files, and contained multiple empty folders, among other issues. *Id.* ¶ 41. Without the necessary data, Plaintiff alleges it has "no reliable or secure means to maintain, update, or deploy fixes to the software," which has "exposed the business to substantial security risks" and "impaired the company's ability to support users and operate the platform." *Id.* ¶ 43.

### B.    **Procedural Background**

Plaintiff filed its Complaint in state court on February 20, 2026. Dkt. 1-3 at 16. In its Complaint, Plaintiff brought nine claims against Defendants: three violations of the Computer Fraud and Abuse Act 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C) (Counts I, II, and

III), Compl. ¶¶ 47–61; breach of contract (Count IV), *id.* ¶¶ 62–67; breach of the covenant of good faith and fair dealing (Count V), *id.* ¶¶ 68–72; conversion (Count VI), *id.* ¶¶ 73–75; fraud (Count VII), *id.* ¶¶ 76–80; unjust enrichment (Count VIII), *id.* ¶¶ 81–84; and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A (Count IX), *id.* ¶¶ 85–88.

Defendants removed to this Court on March 26, 2026. Dkt. 1. On May 8, 2026, Defendants filed a motion to dismiss. Dkt. 10; *see also* Dkt. 11 (Defendants' memorandum of law or "Memo."). Plaintiff filed its opposition on May 28, 2026. Dkt. 17 ("Opp."). The Court held a hearing on June 10, 2026, and took the motion under advisement.

## II.    Standard of Review

Courts analyzing claims under Federal Rule of Civil Procedure 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint." *Id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

### III.    Discussion

#### A.    Violations of the Computer Fraud and Abuse Act (Counts I–III)

Plaintiff alleges LaPierre accessed, without authorization, Plaintiff's software, and in doing so, violated three separate provisions of the Computer Fraud and Abuse Act ("CFAA").  Compl. ¶¶ 47–61 (alleging violations of 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C)). Defendants argue that Counts I through III must be dismissed because LaPierre was authorized to access the laptop and its contents, which places his conduct outside the scope of the CFAA.  Memo. at 11–14.[1]

The CFAA "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (quoting 18 U.S.C. § 1030(a)(2)).[2]  While chiefly a criminal statute, the CFAA also includes a private right of action, "which allows persons suffering 'damage' or 'loss' from CFAA violations to sue for money damages and equitable relief."  *Id.* (quoting 18 U.S.C. § 1030(g)); *see also Excelero Corp. v. Cambece*, 2024 WL 1007836, at *9 (D. Mass. Feb. 28, 2024) ("The CFAA is primarily a criminal statute.").  To determine whether a defendant has acted without authorization, courts employ a "gates-up-or-down" inquiry—a defendant "either can or cannot access a computer system, and one either can or cannot access certain areas within the system."  *Premier Shield Ins., LLC v. Afternic Servs., LLC*, 2022 WL 17541797, at *2 (D. Mass. Dec. 8, 2022) (quoting *Van Buren*, 593 U.S. at 390).  A defendant exceeds authorized access "when he accesses a computer with authorization but then

---

[1] In its opposition, Plaintiff does not address Defendants' arguments as to why the three CFAA claims must be dismissed.

[2] The other two provisions at issue, 18 U.S.C. § 1030(a)(4) and 18 U.S.C. § 1030(a)(5)(C), similarly require Plaintiff to allege LaPierre accessed a computer "without authorization."

obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. at 396.[3]

Plaintiff's claims turn on whether LaPierre accessed his ConnectedView laptop without authorization or exceeded his authorized access. Defendants' characterization is more apt. Plaintiff's allegations plainly demonstrate that LaPierre was authorized to use the laptop. The Complaint identifies the laptop in question as "LaPierre's laptop." Compl. ¶ 19. Plaintiff further alleges that LaPierre "operated" the laptop and that "[LaPierre]'s laptop was the sole device capable of fully supporting, maintaining, and publishing the Faith Teams software environment." Compl. ¶¶ 18, 20. It is apparent from the face of the Complaint that LaPierre not only had authorization to access the laptop, but that he was often the only person who *could* access the laptop.

Furthermore, Plaintiff does not allege LaPierre "exceeded" his authorization in violation of the CFAA. Plaintiff makes no allegation that any part of the computer was "off limits" to LaPierre. *Van Buren*, 593 U.S. at 396. On the contrary, as Defendants note, LaPierre was allegedly working to transfer the software and technology to Plaintiff, a task that necessarily required his access to the technology and data in question. Compl. ¶¶ 34–39; *see also* Memo. at 14. Instead, these allegations comfortably fit within the category of cases the Supreme Court recently deemed outside the CFAA's scope.[4] *Van Buren*, 593 U.S. at 392 (noting the CFAA is "ill fitted . . . to

---

[3] In *Van Buren*, the Supreme Court "addressed a split among circuit courts interpreting this provision" and "rejected a broader reading of the 'exceeds authorized access' provision." *Cashman Dredging & Marine Contracting Co. LLC v. Belisimo*, 759 F. Supp. 3d 120, 151 (D. Mass. 2024). Before *Van Buren*, the First Circuit had applied that, now rejected, broader reading of the statute. *See Van Buren*, 593 U.S. at 381 n.2 (citing *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001)).

[4] In *Van Buren* the Supreme Court also underscored that the CFAA could not possibly cover mere breaches of employer computer-use policies. To hold otherwise would "criminalize[] every violation of a computer-use policy" including those in "the workplace." *Van Buren*, 593 U.S. at 394. Such a conclusion, the Court determined, would be implausible. *Id.* ("If the 'exceeds authorized access' clause criminalizes every violation of a computer-use policy, then millions of otherwise law-abiding citizens are criminals.").

remediating misuse of sensitive information that employees may permissibly access using their computers") (internal quotation marks omitted). "[T]he core allegation here is *not* that anyone hacked their way into [Plaintiff]'s computer system, or even hacked their way into a prohibited area of that system. Rather, the [Complaint] alleges that, having access privileges to [Plaintiff]'s computer system, [Defendant] abused that access . . . ." *Welter v. Med. Prof. Mut. Ins. Co.*, 2023 WL 2988627, at *7 (D. Mass. Feb. 23, 2023) (emphasis in original) (recommending dismissal of a CFAA claim for failure to demonstrate unauthorized access as defined in *Van Buren*). For this reason, each of Plaintiff's three claims for violations of the CFAA lack the essential element of unauthorized access. Counts I, II, and III are therefore dismissed.[5]

### B.    Breach of Contract (Count IV)

Plaintiff alleges Defendants "failed to comply with their obligations under the Asset Purchase Agreement and/or other, related contracts between the parties." Compl. ¶ 64. Defendants make two arguments for dismissal: first, that Plaintiff fails to identify which specific provisions Defendants breached, Memo. at 8–10, and second, that "the contents of the laptop itself were not Plaintiff's property under the terms of the [Asset Purchase Agreement]." Memo. at 15.

Defendants' first argument is easily dispensed with. The pleading standard for a breach of contract claim pursuant to Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") "does not require great detail." *Nnodim v. U.S. Bank Nat'l Ass'n*, 2025 WL 2382232, at *6 (D. Mass. July 31, 2025). To adequately place Defendants on notice of its breach of contract claim, Plaintiff's complaint need only "(1) quote pertinent contractual language; (2) contain a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect." *Foss v. Marvic*, 365 F. Supp.

---

[5] In dismissing Counts I–III, the Court no longer possesses federal question jurisdiction over the dispute. Even still, the Court maintains diversity jurisdiction. Plaintiff is a citizen of Massachusetts and Defendants are citizens of Connecticut. Compl. ¶¶ 2–3.

3d 164, 167 (D. Mass. 2019). The Complaint includes the Employment Agreement and the Asset Purchase Agreement as attachments. Dkt. 1-3 at 18, 36. Defendants admit as much in their brief, pointing to specific provisions of the Asset Purchase Agreement to advance their own arguments. Memo. at 1 n.2 ("The [Asset Purchase Agreement] is an exhibit to the Complaint . . . . [A]ll parts of it necessary for the instant motion are contained in it."). Plaintiff has attached the relevant contracts, which is sufficient to put Defendants on notice of the breach of contract claims pursuant to Rule 8(a).

Turning to Defendants' second argument, the Court finds breach of contract adequately pled. Pursuant to the Employment Agreement, the parties agreed that "upon his separation from employment from [Plaintiff] for any reason, or at the request of [Plaintiff] at any time, [LaPierre would] promptly return all [Plaintiff] property, including but not limited to documents, Confidential Information, storage media, electronic devices, and/or automobile." Dkt. 1-3 at 22; *see also* Compl. ¶ 9. Because Plaintiff obtained possessory interests in the laptop and software through the Asset Purchase Agreement, Plaintiff claims the laptop and software constituted "[Plaintiff] property" under the Employment Agreement. Compl. ¶ 63; *see also* Dkt. 1-3 at 116 (delineating "software and source code" as "purchased intellectual property"). Consequently, Plaintiff claims breach of the Employment Agreement because LaPierre "fail[ed] to deliver" the laptop and software after his departure from the company.[6] Compl. ¶ 66.

Defendants challenge this alleged breach by arguing that Plaintiff never had a possessory interest in the "contents of the laptop" to begin with. Memo. at 15. Defendants allege that while

---

[6] Under this particular provision, Defendants identify a distinction without a discernable difference. Defendants attempt to distinguish between the obligations LaPierre owed to Plaintiff in the event of his resignation instead of his termination. Memo. at 7. However, the relevant provision of the Employment Agreement merely refers to "separation of employment." Dkt 1-3 at 22.

Schedule 1.01(c) of the Asset Purchase Agreement does include "all software, code and similar materials acquired by Plaintiff in the transaction" it does not "require that they be produced on the laptop." Memo. at 4. At the motion to dismiss stage, the Court must construe the alleged facts in the light most favorable to Plaintiff. *Gupta v. Jaddou*, 118 F.4th 475, 481 (1st Cir. 2024). Here, given that LaPierre's laptop "was the sole machine capable of publishing the Faith Teams software and contained the exclusive programs, configurations, credentials, and files required to maintain the platform and deploy production updates," it is plausible that the software contained on LaPierre's laptop was part and parcel of the intellectual property purchased pursuant to the Asset Purchase Agreement. Compl. ¶ 42. Therefore, Defendants' motion to dismiss Count IV is denied.

### C.    Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V)

In connection with its breach of contract claim, Plaintiff alleges Defendants breached the implied covenant of good faith and fair dealing. *Id.* ¶¶ 68–72. Defendants argue that "this claim cannot exist in the absence of evidence that the Defendants acted to destroy the value to Plaintiff of the [Asset Purchase Agreement]." Memo. at 15.

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (quoting *UNO Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)). To determine whether there was a violation of the covenant, Massachusetts courts "look to the party's manner of performance" to infer "lack of good faith." *Robert & Ardis James Found. v. Meyers*, 474 Mass. 181, 189 (2016) (quoting *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82 (2014)). "A breach occurs when one party violates the reasonable expectations of the other." *Chockel v. Genzyme Corp.*, 449 Mass. 272, 276 (2007). As Defendants note, "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash v. Dana-Farber*

*Cancer Inst.*, 443 Mass. 367, 385 (2005), *cert. denied sub nom., Globe Newspaper Co. v. Ayash*, 546 U.S. 927 (2005).

Though Defendants argue Plaintiff fails to plead facts suggesting "that the Defendants acted to destroy the value to Plaintiff of the [Asset Purchase Agreement]," that is precisely what Plaintiff alleges. Memo. at 15. According to the Complaint, LaPierre "knew" the software and source code purchased by Plaintiff "existed only on the laptop but he never provided it to [Plaintiff]." Compl. ¶ 42. LaPierre's alleged "intentional" destruction of "the systems embodying that intellectual property . . . impaired [Plaintiff's] ability to use, verify, maintain, or fully understand what it purchased." Put another way, Plaintiff alleges that LaPierre's actions deprived it of the benefit of the Employment Agreement and the Asset Purchase Agreement. Those allegations are sufficient to constitute a plausible claim for breach of the implied covenant of good faith and fair dealing. Defendants' motion to dismiss Count V is denied.

### D.   Conversion (Count VI)

Plaintiff additionally brings a claim of conversion against Defendants. *Id.* ¶¶ 73–75. Plaintiff claims Defendants "wrongfully exercised dominion and control" over its laptop computer and software programs by "wrongfully retaining said property, and/or by destroying, disabling or impairing its operability." *Id.* ¶ 75. Defendants move for dismissal, again arguing that Plaintiff does not possess a property interest in the "'software programs and Faith Teams-related content' on the laptop." Memo. at 16 (quoting Compl. ¶ 74). As with the breach of contract claim, Defendants' argument fails.

A claim of conversion has four elements under Massachusetts law: "(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant

11

legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." *Unum Grp. v. Loftus*, 220 F. Supp. 3d 143, 148 (D. Mass. 2016) (quoting *United States v. Peabody Const. Co.*, 392 F. Supp. 2d 36, 37 (D. Mass. 2005)).

Here, all elements are adequately pled. As a preliminary matter, intangible electronically stored information, like the software and source code at issue, can be converted. *See e.g., Network Sys. Architects Corp. v. Dimitruk*, 2007 WL 4442349, at *10 (Mass. Sup. Ct. Dec. 6, 2007) (allowing a claim of conversion based on electronic data); *see also Children's Hosp., Corp. v. Cakir*, 2017 WL 4012661, at *4 (D. Mass. Sept. 12, 2007) ("Just as [defendant] would be liable for conversion, as [plaintiff] analogizes, if he had taken a book from [plaintiff], ripped out pages, and then returned the book, so he is similarly liable for conversion because he took the [l]aptop from [plaintiff], deleted data from it, and then returned the [l]aptop."). Here, LaPierre allegedly "factory reset" the laptop and "wiped all of its data prior to its return, resulting in the complete destruction of [i]ntellectual [p]roperty including, but not limited to source code, company data, emails, system record, and related metadata." Compl. ¶ 39. As alleged, this meets the first element: LaPierre's actions constituted an intentional and wrongful exercise in control over the property. Turning to the second element, as noted earlier, it is a plausible reading of the Asset Purchase Agreement that Plaintiff acquired an ownership interest in the software contained on LaPierre's laptop. *See supra* Section III.B. As for the third element, Plaintiff adequately pleads damages as a result of LaPierre's actions. Compl. ¶ 39 ("That data wipe compromised [Plaintiff]'s

ability to access, review, preserve, or forensically examine company-owned information stored on the device.").[7]  Therefore, Defendants' motion to dismiss Count VI is denied.

### E.  Fraud (Count VII)

Plaintiff also brings a claim of fraud, alleging Defendants "made representations that were knowingly false, dishonest, deceitful and misleading for the purposes of, *inter alia*, inducing [Plaintiff] to enter into, without limitation, the Employment Agreement and the Asset Purchase Agreement."  Compl. ¶¶ 76–80.  Defendants argue that Plaintiff fails to plead its fraud claim with particularity, as required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  Memo. at 19–20.

The are five elements to common law fraud in Massachusetts.  Plaintiff must allege that Defendants: (1) made a false representation of material fact; (2) with knowledge of its falsity; (3) for the purpose of inducing Plaintiff to act on this representation; (4) that Plaintiff reasonably relied on the statement; and (5) that Plaintiff was injured as a result of its reliance.  *See AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 928 F.3d 110, 122 (1st Cir. 2019) (citing *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471–72 (2009)).  A fraudulent omission claim contains the same elements, but "the 'false representation' element takes the form of an omission."  *Id.*  In addition, for fraudulent omission, Plaintiff must allege the defendant "conceal[ed] material information" in the face of a "duty requiring disclosure."  *Id.*  Rule 9(b) requires fraud claims "be alleged with particularity."  *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 15 (1st Cir. 2004).  Particularity is a heightened pleading standard requiring the plaintiff to provide, with specificity, the "who, what, where, and when of the allegedly false or fraudulent representation."  *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

---

[7] Neither Plaintiff nor Defendants' briefs suggest that the fourth element is at issue here, because there are no allegations that "defendant legitimately acquired possession of the property under a good-faith claim of right." *Unum Grp.* 220 F. Supp. 3d at 148.  On the contrary, Plaintiff alleges Defendants *sold* their possessory interest in the software to them via the Asset Purchase Agreement.  Compl. ¶ 18.

As to the first element, Plaintiff alleges three misrepresentations and omissions made by Defendants in connection with the Asset Purchase Agreement.[8]  First, in June 2025, months after executing the Asset Purchase Agreement, Plaintiff "discovered that more than twenty Faith Teams accounts were past due at the time of the acquisition" but Defendants had not "disclose[d] those arrearages on Schedule 1.02(b) of the Asset Purchase Agreement."  Compl. ¶ 21.  Second, Plaintiff discovered, after having executed the Asset Purchase Agreement, that Defendants' customer list was "inaccurate" and "overstat[ed] the number of active users on the platform" resulting in an "inflated purchase price."  *Id.* ¶ 22.  Third, Plaintiff learned in October 2025, after the execution of the Asset Purchase Agreement, that the Faith Teams software had been "victimized by fraudulent transactions" in the "summer of 2024."  *Id.* ¶¶ 26–27.  Plaintiff alleges that, had LaPierre disclosed those prior fraudulent transactions, that information would have "materially affected" both the risk assessment and valuation of Faith Teams prior to the sale.  *Id.* ¶ 27.  Defendants attested in Section 3.11 of the Asset Purchase Agreement that "[n]o representation or warranty . . . in this Agreement . . . contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein . . . not misleading."  Dkt. 1-3 at 42.

The second and third elements require Plaintiff to allege facts regarding the intent of the Defendants in making the alleged misrepresentations or omissions.  At the motion to dismiss stage, such intent may be reasonably inferred.  *Lan Glob., Inc. v. Alchemy Telco Sols. US, LLC*, 2023 WL 5978296, at *9 (D. Mass. Jul. 6, 2023).  Here, it is reasonable to assume Defendants, in

---

[8] Defendants additionally claim that Plaintiff engaged in unencumbered due diligence prior to the execution of the Asset Purchase Agreement and did not uncover any issues in that process.  Memo. at 16–17.  But this argument is inappropriate for the pleading stage.  Generally, whether a plaintiff exercised reasonable diligence "is a factual question that is appropriate for the trier of fact."  *Koe v. Mercer*, 450 Mass. 97, 101 (2007); *see also Collins v. Huculak*, 57 Mass. App. Ct. 387, 392 (2003) ("The question, whether the plaintiff exercised due diligence and was justified in placing confidence in the statement of the defendant or should have known from the beginning that the statement was false, is one of fact." (cleaned up) (quoting *Jekshewitz v. Groswald*, 265 Mass. 413, 417 (1929))).

negotiating a sale of substantially all of their assets, would have known about past due accounts, the number of users, and prior instances of fraud on the platform. *See Bezdek v. Vibram USA Inc.*, 2013 WL 639145, at *8–9 (D. Mass. Feb. 20, 2013) (finding scienter adequately alleged where the Court could reasonably infer it was "unlikely the company was ignorant" of the relevant facts).

Regarding the fourth and fifth elements, Plaintiff alleges facts indicating they relied upon Defendants' misrepresentations and omissions and, in doing so, were injured. For example, Plaintiff alleges that had it known about the prior instances of fraudulent activity, it would have affected the total "valuation of Faith Teams prior to the sale." Compl. ¶ 27. Plaintiff also alleges the misrepresentations about Faith Teams's total users led to "an inflated purchase price." *Id.* ¶ 22. It is therefore reasonable to infer that reliance on these alleged misrepresentations and omissions led Plaintiff to overpay for Defendants assets.

Plaintiff also meets the particularity standard under Rule 9(b). They allege, in detail, a "who" (Defendants), a "what" (the three aforementioned misrepresentations and omissions in connection with the Asset Purchase Agreement), a "when" (March 19, 2025, when the Asset Purchase Agreement was signed), and a "where" (in the Asset Purchase Agreement itself). The allegations therefore provide sufficient notice to Defendants of the details of Plaintiff's fraud claim. *Avalanche IP, LLC v. FAM, LLC*, 2021 WL 149258, at *5 (D. Mass. Jan. 15, 2021) ("These allegations are sufficient to put [Defendant] on notice and allow it to defend itself, which is the main purpose of Rule 9(b)'s heightened pleading standard."). Accordingly, Defendants' motion to dismiss Count VII is denied.

### F.    Unjust Enrichment (VIII)

Plaintiff additionally alleges that Defendants conduct constituted unjust enrichment and therefore "it would be inequitable to allow the Defendants to retain those benefits." Compl. ¶¶ 81–84. Defendants do not address the merits of Plaintiff's claim, instead arguing that the

15

existence of the Asset Purchase Agreement bars Plaintiff from raising unjust enrichment altogether.  Memo. at 17.

It is well-established law in Massachusetts that a plaintiff may plead unjust enrichment in the alternative to breach of contract.  *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) ("[I]t is accepted practice to pursue both theories at the pleading stage.").  Defendants' citations to *Guldseth v. Family Med. Assocs. LLC*, 45 F.4th 526 (1st Cir. 2022), and *Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010), both of which are summary judgment decisions, only emphasize this point.  While Defendants are correct "that damages for breach of contract and unjust enrichment are mutually exclusive" at later stages of litigation like summary judgment, at the pleading stage, "it is generally permissible to pursue alternative theories."  *Cooper v. Charter Commc'ns Ents. I, LLC*, 760 F.3d 103, 112–13 (1st Cir. 2014); *see also PerkinElmer Health Scis. Inc. v. LabQ Clinical Diagnostics LLC*, 673 F. Supp. 3d 69, 71 (D. Mass. 2023) ("Plaintiff will eventually need to choose which theory of recovery to pursue but there is no need to do so at this early stage in the litigation." (internal quotation marks omitted)).

Turning to the merits, Defendants inform the Court they "have not evaluated whether [Plaintiff's unjust enrichment] claim is sufficient on its merits or contains all necessary elements to be plausible" but nevertheless they "reserve all rights to address these issues should they be relevant."  Memo. at 2 n.3.  But Defendants are not entitled to another bite at the apple.  *See* Federal Rule of Civil Procedure 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").  Defendants may not, on their own initiative, "reserve all rights to address" the merits of one of Plaintiff's claims, thereby demanding a bifurcated briefing schedule for which the Court never granted leave.  *Cf. McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13,

16

22 n.7 (1st Cir. 1991) ("Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion."). Defendants also quietly raise their argument in a mere footnote. *See P.R. Tel. Co., Inc. v. San Juan Cable LLC*, 874 F.3d 767, 770 (1st Cir. 2017) ("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived."). The Court need devote no more time to Defendants' assertion. Defendants' motion to dismiss Count VIII is denied.

### G.    Violation of Mass. Gen. Laws ch. 93(A) (Count IX)

Finally, Plaintiff alleges Defendants' conduct constitutes unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93(A). Compl. ¶¶ 85–88. Defendants argue that Plaintiff's allegations, which they describe as "little more than a dressed-up contract dispute," fail to rise to the level of unfair and deceptive acts. Memo. at 18–19.

Under Chapter 93A, an unfair or deceptive practice is "best discerned from the circumstances." *Cynosure, LLC v. Reveal Lasers LLC*, 793 F. Supp. 3d 315, 347 (D. Mass. 2025) (quoting *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 17 (1st Cir. 2021)). To determine if a practice is unfair, the Court considers "whether the conduct: (1) is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or other businesses." *Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 39 (1st Cir. 2024) (internal quotation marks omitted). While Defendants are correct that the "simple fact that a party knowingly breached a contract" is generally insufficient to support at Chapter 93A claim, "[i]t is well established that a breach of contract *can* lead to a violation of Chapter 93A." *Ahern v. Scholz*, 85 F.3d 774, 798 (1st Cir. 1996) (emphasis added); *see also id.* (noting conduct "in disregard of known contractual arrangements" and "intended to secure benefits for the breaching party" may constitute an unfair act or practice).

17

Here, Plaintiff alleges more than a mere breach of contract. The alleged facts include violations of "common-law, statutory, or other established concept of unfairness" such as breach of the covenant of good faith and fair dealing and fraud. Compl. ¶¶ 68–72, 76–79; *see also supra* Sections III.C, III.E. "Courts have held that claims of violation of the implied covenant of good faith and fair dealing are not simple breach of contract claims for purposes of Chapter 93A. Inherent in such claims is an element of either bad faith and improper motive or a breach of fair dealing that clearly falls within established common law concepts of unfairness." *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 140 (D. Mass. 2005) (cleaned up) (quoting *Trent Partners & Assocs., Inc. v. Digit. Equip. Corp.*, 120 F. Supp. 2d 84, 107 (D. Mass. 1999)). Claims of fraud too, assuming they "satisfy the heightened pleading requirements" of Rule 9(b), "often can form the basis for a Chapter 93A claim." *Rick v. Profit Mgmt. Assocs., Inc.*, 2018 WL 1783797, at *4 (D. Mass. Apr. 13, 2018) (quoting *Rodi,* 389 F.3d 5 at 20).

As set out in Section III.C and Section III.E, Plaintiff plausibly states a claim for breach of the implied covenant of good faith and fair dealing and a claim of common law fraud. Defendants allegedly misrepresented certain material facts about the Faith Teams business in connection with the Asset Purchase Agreement. Compl. ¶¶ 21–22, 27. And in connection with his departure, LaPierre factory reset Plaintiff's laptop, resulting in the "complete destruction" of intellectual property Plaintiff had purchased in the Asset Purchase Agreement. *Id.* ¶ 39. These allegations are sufficient to state a claim for a violation of Chapter 93A and Defendants' motion to dismiss Count IX is denied.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Counts I, II, and III. Defendants' motion is DENIED as to Counts IV, V, VI, VII, VIII and IX.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated: June 22, 2026                    Judge, United States District Court